UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:                                                          Case No. 2:23-bk-00373-FMD
                                                                Chapter 11

H2O Investment Properties, LLC,

        Debtor.

_____/

### Plan of Reorganization for Small Business Under Chapter 11, Subchapter V

        H2O Investment Properties, LLC, by and through its undersigned legal counsel, pursuant to section 1189(b) of Title 11 of the United States Code ("Bankruptcy Code"), proposes this Plan of reorganization ("**Plan**") this 3rd day of July 2023.

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

        This Plan of Reorganization for Small Business Under Chapter 11, Subchapter V ("**Plan**") is being submitted by H2O Investment Properties, LLC ("**H2O**"), the above-captioned debtor and debtor in possession ("**Debtor**") under Bankruptcy Code Chapter 11, Subchapter V (11 U.S.C. § 1181 et seq.) ("**Subchapter V**"). Bankruptcy Code Section 1190 requires plans of reorganization filed under Subchapter V include "a brief history of the business operations of the debtor." 11 U.S.C. § 1190(1)(B).

        The Debtor is a Florida limited liability company founded in 2023 by Ronald Glen Sapp ("**Mr. Sapp**") and Michelle Baron ("**Ms. Baron**"). H2O is in the business of purchasing, improving, and disposing of distressed property—by sale or lease –purchased from Chapter 7 and Chapter 13 trustees. The Debtor's ability to generate an income is largely tied to labor, management, and other contributions by Mr. Sapp and Ms. Baron. The Debtor's principal place of business is an office located at 999 Vanderbilt Beach Road, Suite 200, Naples, FL 34108, which it leases.

        Currently, the Debtor owns certain real property and improvements thereon located at 909 SW Schaeffer Road, West Linn, OR 97068 (the "**West Linn Property**") and 30620 SW Rose Lane, Wilsonville, OR 97070 (the "**Wilsonville Property**" and together with the West Linn Property, the "**Properties**"). Substantially all the Debtor's assets are located at, in, or on the Properties. The Debtor maintains operations at the Properties.

        The Properties were purchased by Brilliant Homes LLC ("**Brilliant**"), an Oregon limited liability company owned by Mr. Sapp, which operates similarly to the Debtor.  The Properties were at all times relevant hereto subject to secured claims. Mr. Sapp, with his substantial working knowledge of improving and selling distressed properties, recognized that the value of the

Properties could well exceed the value of its encumbrances; however, it would require Mr. Sapp to invest substantial capital, energy, and—most importantly—time.

Facing judgments which would otherwise endanger Brilliant's operations, it transferred the West Linn Property and Wilsonville Property to the Debtor, which thereafter made significant investments in the Properties with Mr. Sapp's and Ms. Barons' help. In total, Mr. Sapp invested over $300,000 into the Properties, targeting such investments towards repairs which would substantially increase the Properties' value beyond Mr. Sapp's capital inputs.

While the Properties would soon be in marketable condition for more than the sum of all secured claims, certain creditors grew impatient. Notwithstanding the downward pressure a private foreclosure auction would have on total value received, the Wilsonville Property was scheduled for such a sale on April 3, 2023.

On April 2, 2023, the Debtor initiated the above-captioned case ("**Case**") by filing its voluntary petition for relief under Subchapter V. The Debtor initiated the Case in light of the foregoing, and in recognition that a forced sale would expose secured creditors to an uncomfortably high risk of not getting paid in full. Filing this Case and this Plan ensures that creditors with valid liens against the Properties would receive more than they would receive outside of a Chapter 11 Case.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. Attached hereto as __**Exhibit A**__ and incorporated herein by reference is a liquidation analysis, which shows that fully secured creditors of the West Linn Property would receive One Hundred Percent (100%) distribution on their claims in a chapter 7 liquidation. The creditors of the Wilsonville Property, however, will not receive One Hundred Percent (100%) and would receive substantially the same as they will under a the Plan.  Moreover, by proceeding under the terms of the Plan, the Debtor will be avoiding the additional costs that would be incurred in a Chapter 7 case.  Accordingly, the treatment proposed under the Plan satisfies Section 1129(a)(7) of the Bankruptcy Code.

### C. Means for Implementing Plan

This Plan proposes to sell the West Linn Property which is currently listed for sale on the open market in order to fund the Plan.  The Debtor submits that an orderly sale of the West Linn Property will result in a better price than it could receive under fire sale conditions.  Once a buyer for the West Linn Property is identified by the Debtor, a motion to permit the sale under this Plan will be filed.  Importantly, the Debtor will be seeking relief under section 1146 of the Bankruptcy Code in that the sale will be made pursuant to the Plan.

The Debtor has determined that the Wilsonville Property's value is significantly lower than the Debtor initially believed on the Petition Date. The Wilsonville Property, not previously in a flood plain, was later determined to be in a high-risk flood zone once the local flood maps were redrawn. This determination created an issue with a simple renovation of the Wilsonville Property and now requires a complete rebuild above the flood plain in order to obtain financing.

Because the value of the Wilsonville Property is less than the amount owed on the first priority lien, all other subordinate liens must be voided. Contemporaneously with the Plan, the Debtor will file motions to determine the secured status and void liens (collectively, the "**Lien Motions**") that are purportedly held by the following alleged secured creditors:

1. Arbor Village Homeowners Association;
2. City of Oregon City;
3. Deem Realty Funding, Inc.;
4. DJ Property Solutions, Inc.;
5. Xianghua "Ed" Pan and Gretchen Pan;
6. Planet Home Lending (BCMB1);
7. Quality Loan Service Corp of Washington; and,
8. Shell Point Mortgage Services.

In the event that the subordinated lien is voided, as anticipated, the unsecured creditors will not have standing to receive a distribution under this Plan. Instead, the only recourse that these unsecured creditors have is against the Wilsonville Property, which is fully encumbered by Shell Point. The Debtor's successor purchased the Wilsonville Property subject to the liens. However, it did not assume the payment obligations under the underlying note or other debt instrument. Thus, the alleged secured creditors—with the exception of Shell Point—will have their lien completely voided and will not have any further recourse against the Debtor.

### D. Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Bankruptcy Code requires that any plan of reorganization be feasible. Specifically, Section 1129(a) of the Bankruptcy Code provides, in pertinent part, that a plan of reorganization shall not be confirmed unless "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

The Debtor believes it will have the West Linn Property sold by the first-year anniversary of the effective date of the Plan ("**Effective Date**"), which will fully repay all secured liens on the West Linn Property and provide sufficient working capital to rebuild the Wilsonville Property which would then begin generating income and, thus, contribute to the ongoing business of the Company. The Debtor also anticipates purchasing additional properties to rehabilitate and either lease or sell to generate additional income for the Debtor. To the extent that more funding is needed to continue business operations, Brilliant has agreed to provide financing in the form of loans ensuring sufficient working capital to fund the Plan.

Chapter 11 plans of reorganization not filed under Subchapter V cannot be confirmed unless at least One (1) impaired class of claims or interests votes to accept such plan. 11 U.S.C. §§ 1129(a)(8), (10). However, Subchapter V plans of reorganization do not require acceptance by impaired creditors if certain conditions are met. Bankruptcy Code Section 1191(b) provides that if a Subchapter V plan of reorganization meets the applicable requirements set forth in Bankruptcy Code 1129(a)—other than those set forth in Bankruptcy Code Sections 1129(a)(8), (10), & (15)— then "the court, on request of the debtor, *shall* confirm the plan . . . if the plan does not discriminate unfairly, and is *fair and equitable*, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b) (emphasis added).

The Debtor anticipates that not all impaired classes of claims or interests will vote to confirm the Plan. Thus, the Debtor requests the Plan be confirmed pursuant to Bankruptcy Code Section 1191(b) in the event one or more impaired class of claims or interests votes to reject the Plan or does not vote at all.

Bankruptcy Code Section 1191(c) provides a non-exhaustive list of requirements which must be met for a Subchapter V plan to be considered "fair and equitable," and therefore subject to confirmation as a non-consensual plan. *See generally* 11 U.S.C. § 1191(c).

To be considered "fair and equitable," a Subchapter V plan of reorganization must meet Bankruptcy Code Section 1129(b)(2)(A)'s requirements as to all classes of secured claims. 11 U.S.C. § 1191(c)(1). Bankruptcy Code Section 1129(b)(2)(A) requires that a plan of reorganization let secured creditors: (i) retain the entirety of their liens upon the property securing their claim, together with deferred cash payments totaling the value—as of the plan's effective date—of their interest in the property securing their claim; or (ii) receive the indubitable equivalent of the foregoing. 11 U.S.C. § 1129(b)(2)(A).  Here, secured creditors for the West Linn Property and, as determined by the Court pursuant to the Motions to Determine Secured Status and Strip Liens, with respect to the Wilsonville Property undersecured creditors, will retain their liens and receive deferred cash payments totaling the value—as of the Plan's effective date—of their interest in the property securing their claims, plus interest, under the Plan.  Therefore, the Plan meets Bankruptcy Code Section 1129(b)(2)(A)'s requirements to be "fair and equitable."

To be considered "fair and equitable," a Subchapter V plan of reorganization must—over the course of the Five (5) years immediately following the plan's effective date—either: (i) pay holders of allowed claims and interests cash payments equaling all of the debtor's disposable income ("**Disposable Income**") for at least the Five (5) years immediately following the plan's effective date; or (ii) distribute to holders of allowed claims and interests property of a value collectively meeting or exceeding the Disposable Income's value for at least the Five (5) years immediately following the plan's effective date. 11 U.S.C. § 1191(c)(2). Bankruptcy Code Section 1191(d) defines Disposable Income as "income that is received by the debtor and that is not reasonably necessary to be expended . . . . [for] the maintenance or support of the debtor . . . . [or] for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor." 11 U.S.C. § 1191(d).

Attached hereto as Exhibit B are the Debtor's financial projections for the life of the Plan ("Financial Projections").  The Financial Projections show that the Debtor, over the course of Three (3) years, will pay unsecured classes of claims and interests cash payments totaling the lesser of: (i) the amount of their claim; or (ii) all the Debtor's Disposable Income for at least the Three (3) years immediately following the Effective Date.

A Subchapter V plan of reorganization cannot be considered "fair and equitable" unless "there is a reasonable likelihood that the debtor will be able to make all payments under the plan" and "the plan provides appropriate remedies . . . to protect the holders of claims or interests in the event that the payments are not made." 11 U.S.C. § 1191(c)(3).

The Financial Projections show that the Debtor will be able to pay off all secured creditors on the West Linn Property, fund the rebuild of the Wilsonville Property, then refinance the Wilsonville Property to fund the ongoing business operations. Further, Brilliant has agreed to provide loans sufficient to cover Plan payments in the event that operations' funding is insufficient.

By including self-executing default provisions which provide an alternate means for paying creditors no less than they would receive if the Debtor was liquidated, the Plan also provides appropriate remedies in the event payments are not made. Bankruptcy Code section 1192 provides, in pertinent part, that if a plan is confirmed under Bankruptcy Code section 1191(b), discharge of the Debtor's debts may not occur prior to "completion by the debtor of all payments due within the first 3 years of the plan[.]" 11 U.S.C. § 1192 (2022).

Acceptance by impaired classes of claims and interests is not necessary, as the Plan is fair and equitable under Bankruptcy Code Section 1191. All holders of allowed interests and claims will receive the lesser of: (i) the legal, equitable, and contractual rights to which they are entitled by virtue of their claim or interest; or, collectively, (ii) the Debtor's disposable income for at least the Three (3) years immediately following the Effective Date.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### Article 1: Summary

This Plan provides for:

> 16 classes of secured claims;
> 1 classes of general unsecured creditors; and
> 1 class of equity security holders.

All creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2: Classification of Claims and Interests

2.01    **Class 1……………**    The secured claim held by Clackamas County Service District Water/Sewer Department ("**Clackamas W/S**"). The Debtor scheduled the Clackamas W/S claim as an unknown amount.

2.02    **Class 2……………**    The secured claim held by Arbor Village Homeowners Association ("**Arbor Village**") and secured by the Wilsonville Property. The Debtor scheduled Arbor Village as holding a secured claim totaling Thirteen Thousand Two Hundred Thirty-Six and 11/100 Dollars ($13,236.11).

2.03    **Class 3** ...................... The secured claim held by Citadel Servicing Corp. ("**Citadel**") and secured by the West Linn Property. The Debtor scheduled Citadel as holding a fully secured claim totaling One Million Three Hundred Forty-Four Thousand Eight Hundred Fourteen and 00/100 Dollars ($1,344,814.00). Citadel filed Proof of Claim No. 1 in the amount of One Million Four Hundred Twenty-Six Thousand Nine Hundred Sixty-Three and 26/100 Dollars ($1,426,963.26).

2.04    **Class 4** ...................... The secured claim held by the City of Oregon City ("**Oregon City 1**") and secured by the Wilsonville Property. The Debtor scheduled Oregon City 1 as holding a secured claim totaling Fourteen Thousand Six Hundred One and 00/100 Dollars ($14,601.00).

2.05    **Class 5** ................ The secured claim held by the City of Oregon City ("**Oregon City 2**") and secured by the Wilsonville Property. The Debtor scheduled Oregon City 2 as holding a secured claim totaling Seventy-Two Thousand Twenty-Six and 00/100 Dollars ($72,026.00).

2.06    **Class 6** .............. The secured claim held by Deem Realty Funding, Inc. ("**Deem 1**") and secured by the Wilsonville Property. The Debtor scheduled Deem 1 as holding a secured claim totaling Twenty Thousand Seven Hundred Ten and 08/100 Dollars ($20,710.08).

2.07    **Class 7** ................ The secured claim held by Deem Realty Funding, Inc. ("**Deem 2**") and secured by the Wilsonville Property. The Debtor scheduled Deem 2 as holding a secured claim totaling Forty-Nine Thousand Four Hundred Twenty-Four and 96/100 Dollars ($49,424.96).

2.08    **Class 8** ................ The secured claim held by DJ Property Solutions, LLC ("**DJ**") and secured by the Wilsonville Property. The Debtor scheduled DJ as holding a secured claim totaling Sixty-Nine Thousand Eight Hundred Ninety-Nine and 96/100 Dollars ($69,899.96).

2.09    **Class 9**............. The secured claim held by Gretchen Pan and Xianghua "Ed" Pan (the "**Pans**") and secured by the Wilsonville Property. The Debtor scheduled the Pans as holding a secured claim totaling Six Thousand Three Hundred Five and 00/100 Dollars ($6,305.00).

2.10    **Class 10** ............. The secured claim held by Jennifer Sirrine ("**Ms. Sirrine**") and secured by the West Linn Property. The Debtor scheduled Ms. Sirrine as holding a fully secured claim totaling Five Thousand Two Hundred Two and 00/100 Dollars ($5,202.00).

2.11   **Class 11** ............   The secured claim held by Loan Processing Servicing Corp. ("**LPSC**") and secured by the West Linn Property. The Debtor scheduled LPSC as holding a fully secured claim totaling One Hundred Ninety-Seven Thousand Five Hundred Ninety-Four and 29/100 Dollars ($197,594.29).

2.12   **Class 12**.............   The secured claim held by Oregon State Credit Union ("**Oregon State CU**") and secured by the West Linn Property. The Debtor scheduled Oregon State CU as holding a fully secured claim totaling Twenty-Eight Thousand One Hundred Sixty-Three and 29/100 Dollars ($28,163.28).

2.13   **Class 13**..............   The secured claim held by BCMB1 ("**BCMB1**") (loan serviced by Planet Home Lending ("**Planet**")) and secured by the Wilsonville Property. The Debtor scheduled Planet as holding a secured claim totaling Three Hundred Sixty-Five Thousand and 00/100 Dollars ($365,000.00). BCMB1 filed Proof of Claim No. 2 in the amount of Four Hundred Two Thousand Nine Hundred Eighty-Seven and 00/100 Dollars ($402,987.00).

2.14   **Class 14**..............   The secured claim held by Quality Loan Servicing Corp of Washington ("**Quality**") and secured by the Wilsonville Property. The Debtor scheduled Quality as holding a secured claim totaling One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00). This claim is included in the claim in Class 13 held by BCMB1.

2.15   **Class 15** .............   The secured claim held by Shell Point Mortgage ("**Shell Point**") and secured by the Wilsonville Property. The Debtor scheduled Shell Point as holding a secured claim totaling One Million Fifty-One Thousand Six Hundred and 00/100 Dollars ($1,051,600.00).

2.16   **Class 16** .............   The secured claim held by Umpqua Bank ("**Umpqua**") and secured by the West Linn Property. The Debtor scheduled Umpqua as holding a fully secured claim totaling One Hundred Two Thousand Eight Hundred Seventy-Two and 00/100 Dollars ($102,872.00).

2.17   **Class 17**..............   The claims of General Unsecured Creditors, excluding any "equity security holders" as defined under Bankruptcy Code 101(17).

2.18   **Class 18** ...................   All Equity Security Holders



**Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

| 3.01 | **Unclassified claims** | Under section 1123(a)(1) of the Bankruptcy Code, administrative expense claims and priority tax claims need not be classified. Instead, the treatment of such claims is provided for in this Article 3 of the Plan. |
|---|---|---|
| 3.02 | **Administrative expense claims** | Pursuant to § 1191(e) of the Bankruptcy Code, each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid through the Plan on the Effective Date. |
| 3.03 | **Priority Tax Claims** | The Debtor is aware of certain real property taxes that are owed on the Properties. The Debtor intends to allocate sufficient funds from the sales of the Properties to satisfy all real property taxes due and payable upon the Properties upon the closing of the sale of each Property. The Debtor believes that the amount necessary to satisfy such obligation currently totals approximately Three Thousand and 00/100 Dollars ($3,000.00). The priority unsecured tax claim—under Bankruptcy Code § 507(a)(8)—held by the Clackamas County Tax Collector Real Estate Taxes ("**Clackamas RE Tax**"). The Debtor scheduled the Clackamas RE Tax claim totaling Three Thousand and 00/100 Dollars ($3,000.00). |
| 3.03 | **Statutory fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date have been paid or will be paid timely as they come due; provided, however, that there are no statutory fees due pursuant to 28 U.S.C. § 1930(a)(6)(A) as this is a case under Subchapter V of the Bankruptcy Code. |

**Article 4: Treatment of Claims and Interests Under the Plan**

Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1** – The Clackamas W/S priority unsecured claim. | [   ] Impaired<br>[X] Unimpaired | Class 1 is unimpaired by the Plan.<br><br>Class 1 consists of the secured claim held by Clackamas W/S. The allowed Class 1 claim shall be paid in equal quarterly payments over the life of the Plan.<br><br>Class 1 is deemed unimpaired under Bankruptcy Code section 1124 and is not eligible to vote on the Plan. |

| | | |
|---|---|---|
| **Class 2** – Arbor Village | [ X ] Impaired<br>[   ] Unimpaired | Class 2 is impaired by the Plan.<br><br>Class 2 consists of the secured scheduled claim held by Arbor Village. Arbor Village failed to timely file a Proof of Claim. The Arbor Village claim is last in priority on the Wilsonville Property. The Wilsonville Property is deemed to be valued significantly lower than anticipated and may not have sufficient value to pay off all secured creditors.<br><br>The Debtor purchased the Wilsonville Property subject to this secured claim. However, the Debtor did not assume the underlying obligations for any deficiency claim. Therefore, Arbor Village's only recourse to be paid on this claim is through its lien, which is completely undersecured.<br><br>The Debtor intends to file a Motion to Determine Secured Status and Void Liens as to each claim secured by the Wilsonville Property. If the liens are stripped, Arbor Village will have no other recorse against the Debtor and will not receive any distribution under this Plan.<br><br>Class 2 is deemed impaired under Bankruptcy Code section 1124 and is eligible to vote on the Plan. |
| **Class 3** – Citadel | [   ] Impaired<br>[X] Unimpaired | Class 3 is unimpaired by the Plan.<br><br>Class 3 consists of the secured claim of Citadel. Citadel timely filed Proof of Claim No. 1 in the amount of $1,426,963.26. The Debtor intends to satisfy the allowed claim secured by the West Linn Property held by Citadel from the proceeds of the sale of the West Linn Property which is currently listed for sale.<br><br>Until paid in full on account of such Class 3 claim, the holder of allowed Class 3 claim shall be granted a lien in the West Linn Property (and in the applicable proof of claim) to the same extent and validity as their pre-petition lien upon the West |

Linn Property. The Debtor has agreed to make adequate protection payments in the amount of $9,507.26 per month on this debt.

Class 3 is deemed unimpaired under Bankruptcy Code section 1124 and is not eligible to vote on the Plan.

| | | |
|---|---|---|
| **Class 4** – Oregon City 1 | [X] Impaired<br>[  ] Unimpaired | Class 4 is impaired by the Plan.<br><br>Class 4 consists of the secured scheduled claim of Oregon City 1. Oregon City 1 failed to timely file a proof of claim. The Oregon City 1 claim is 8th in priority on the Wilsonville Property. The Wilsonville Property is deemed to be valued significantly lower than anticipated and may not have sufficient value to pay off all secured creditors.<br><br>The Debtor purchased the Wilsonville Property subject to this secured claim. However, the Debtor did not assume the underlying obligations for any deficiency claim. Therefore, Oregon City 1's only recourse to be paid on this claim is through its lien, which is completely undersecured.<br><br>The Debtor intends to file a Motion to Determine Secured Status and Void Liens as to each claim secured by the Wilsonville Property. If the liens are stripped, Oregon City 1 will have no other recorse against the Debtor and will not receive any distribution under this Plan.<br><br>Class 4 is deemed impaired under Bankruptcy Code section 1124 and is eligible to vote on the Plan. |

| | | |
|---|---|---|
| **Class 5 –** Oregon City 2 | [X] Impaired<br>[  ] Unimpaired | Class 5 is impaired by the Plan. |

Class 5 consists of the secured scheduled claim of Oregon City 2. Oregon City 2 failed to timely file a proof of claim. The Oregon City 2 claim is 7th in priority on the Wilsonville Property. The Wilsonville Property is deemed to be valued significantly lower than anticipated and may not have sufficient value to pay off all secured creditors.

The Debtor purchased the Wilsonville Property subject to this secured claim. However, the Debtor did not assume the underlying obligations for any deficiency claim. Therefore, Oregon City 2's only recourse to be paid on this claim is through its lien, which is completely undersecured.

The Debtor intends to file a Motion to Determine Secured Status and Void Liens as to each claim secured by the Wilsonville Property. If the liens are stripped, Oregon City 2 will have no other recorse against the Debtor and will not receive any distribution under this Plan.

Class 5 is deemed impaired under Bankruptcy Code section 1124 and is eligible to vote on the Plan.

| **Class 6** – Deem 1 | [X] Impaired<br>[  ] Unimpaired | Class 6 is impaired by the Plan. |
|---|---|---|
| | | Class 6 consists of the secured scheduled claim of Deem 1. Deem 1 failed to timely file a proof of claim.  The Deem 1 claim is 6th in priority on the Wilsonville Property. The Wilsonville Property is deemed to be valued significantly lower than anticipated and may not have sufficient value to pay off all secured creditors. |
| | | The Debtor purchased the Wilsonville Property subject to this secured claim. However, the Debtor did not assume the underlying obligations for any deficiency claim. Therefore, Deem 1's only recourse to be paid on this claim is through its lien, which is completely undersecured. |
| | | The Debtor intends to file a Motion to Determine Secured Status and Void Liens as to each claim secured by the Wilsonville Property. If the liens are stripped, Deem 1 will have no other recorse against the Debtor and will not receive any distribution under this Plan. |
| | | Class 6 is deemed impaired under Bankruptcy Code section 1124 and is eligible to vote on the Plan. |

| **Class 7** – Deem 2 | [X] Impaired<br>[  ] Unimpaired | Class 7 is impaired by the Plan. |
|---|---|---|
| | | Class 7 consists of the secured scheduled claim of Deem 2. Deem 2 failed to timely file a proof of claim. The Deem 2 claim is 5th in priority on the Wilsonville Property. The Wilsonville Property is deemed to be valued significantly lower than anticipated and may not have sufficient value to pay off all secured creditors. |
| | | The Debtor purchased the Wilsonville Property subject to this secured claim. However, the Debtor did not assume the underlying obligations for any deficiency claim. Therefore, Deem 2's only recourse to be paid on this claim is through its lien, which is completely undersecured. |
| | | The Debtor intends to file a Motion to Determine Secured Status and Void Liens as to each claim secured by the Wilsonville Property. If the liens are stripped, Deem 2 will have no other recorse against the Debtor and will not receive any distribution under this Plan. |
| | | Class 7 is deemed impaired under Bankruptcy Code section 1124 and is eligible to vote on the Plan. |

| | | |
|---|---|---|
| **Class 8** – DJ | [X] Impaired<br>[  ] Unimpaired | Class 8 is impaired by the Plan.<br><br>Class 8 consists of the secured scheduled claim of DJ. DJ failed to timely file a proof of claim.  The DJ claim is 4th in priority on the Wilsonville Property. The Wilsonville Property is deemed to be valued significantly lower than anticipated and may not have sufficient value to pay off all secured creditors.<br><br>The Debtor purchased the Wilsonville Property subject to this secured claim. However, the Debtor did not assume the underlying obligations for any deficiency claim. Therefore, DJ's only recourse to be paid on this claim is through its lien, which is completely undersecured.<br><br>The Debtor intends to file a Motion to Determine Secured Status and Void Liens as to each claim secured by the Wilsonville Property. If the liens are stripped, DJ will have no other recorse against the Debtor and will not receive any distribution under this Plan.<br><br>Class 8 is deemed impaired under Bankruptcy Code section 1124 and is eligible to vote on the Plan. |

| | | |
|---|---|---|
| **Class 9** - Pans | [X] Impaired<br>[  ] Unimpaired | Class 9 is impaired by the Plan.<br><br>Class 9 consists of the secured scheduled claim of the Pans. The Pans failed to timely file a proof of claim.  The Pans claim is 3rd in priority on the Wilsonville Property. The Wilsonville Property is deemed to be valued significantly lower than anticipated and may not have sufficient value to pay off all secured creditors.<br><br>The Debtor purchased the Wilsonville Property subject to this secured claim. However, the Debtor did not assume the underlying obligations for any deficiency claim. Therefore, The Pans' only recourse to be paid on this claim is through its lien, which is completely undersecured.<br><br>The Debtor intends to file a Motion to Determine Secured Status and Void Liens as to each claim secured by the Wilsonville Property. If the liens are stripped, The Pans will have no other recorse against the Debtor and will not receive any distribution under this Plan.<br><br>Class 9 is deemed impaired under Bankruptcy Code section 1124 and is eligible to vote on the Plan. |

| **Class 10** – Ms. Sirrine | [ ] Impaired<br>[X] Unimpaired | Class 10 is unimpaired by the Plan.<br><br>Class 10 consists of the secured claim of Ms. Sirrine. Ms. Sirrine failed to timely file a proof of claim. The Debtor intends to satisfy the allowed claim secured by the West Linn Property held by Ms. Sirrine from the proceeds of the sale of the West Linn Property which is currently listed for sale.<br><br>Until paid in full on account of such Class 10 claim, the holder of allowed Class 10 claim shall be granted a lien in the West Linn Property to the same extent and validity as their pre-petition lien upon the West Linn Property.<br><br>Class 10 is deemed unimpaired under Bankruptcy Code section 1124 and is not eligible to vote on the Plan. |
| **Class 11** - LPSC | [ ] Impaired<br>[X] Unimpaired | Class 11 is unimpaired by the Plan.<br><br>Class 11 consists of the secured claim of LPSC. LPSC failed to timely file a proof of claim. The Debtor intends to satisfy the allowed claim secured by the West Linn Property held by LPSC from the proceeds of the sale of the West Linn Property which is currently listed for sale.<br><br>Until paid in full on account of such Class 11 claim, the holder of allowed Class 11 claim shall be granted a lien in the West Linn Property to the same extent and validity as their pre-petition lien upon the West Linn Property.<br><br>Class 11 is deemed unimpaired under Bankruptcy Code section 1124 and is not eligible to vote on the Plan. |

| | | |
|---|---|---|
| **Class 12** – Oregon State CU | [ ] Impaired<br>[X] Unimpaired | Class 12 is unimpaired by the Plan.<br><br>Class 12 consists of the secured claim of Oregon State CU. Oregon State CU failed to timely file a Proof of Claim. The Debtor intends to satisfy the allowed claim secured by the West Linn Property held by Oregon State CU from the proceeds of the sale of the West Linn Property which is currently listed for sale.<br><br>Until paid in full on account of such Class 12 claim, the holder of allowed Class 12 claim shall be granted a lien in the West Linn Property to the same extent and validity as their pre-petition lien upon the West Linn Property.<br><br>Class 12 is deemed unimpaired under Bankruptcy Code section 1124 and is not eligible to vote on the Plan. |

| | | |
|---|---|---|
| **Class 13 – BCMB1** | [X] Impaired<br>[ ] Unimpaired | Class 13 is impaired by the Plan.<br><br>Class 13 consists of the secured scheduled claim of BCMB1 in the amount of $365,000.00. BCMB1 timely filed Proof of Claim No. 2 in the amount of $402,987.00. The BCMB1 claim is 2nd in priority on the Wilsonville Property. The Wilsonville Property is deemed to be valued significantly lower than anticipated and may not have sufficient value to pay off all secured creditors.<br><br>The BCMB1 claim appears to include the claim in Class 14 held by Quality. It appears that Quality was a substitute trustee for BCMB1 as noted on the title report for the Wilsonville Property. Once the status is verified, the Debtor will amend its schedules to remove Quality as a creditor.<br><br>The Debtor purchased the Wilsonville Property subject to this secured claim. However, the Debtor did not assume the underlying obligations for any deficiency claim. Therefore, BCMB1's only recourse to be paid on this claim is through its lien, which is completely undersecured.<br><br>The Debtor intends to file a Motion to Determine Secured Status and Void Liens as to each claim secured by the Wilsonville Property. If the liens are stripped, BCMB1 will have no other recorse against the Debtor and will not receive any distribution under this Plan.<br><br>Class 13 is deemed impaired under Bankruptcy Code section 1124 and is eligible to vote on the Plan. |

| **Class 14** – Quality | [X] Impaired<br>[ ] Unimpaired | Class 14 is impaired by the Plan. |
| | | Class 14 consists of the secured scheduled claim of Quality. Quality failed to timely file a proof of claim, however, this claim appears to be included in the Class 13 BCMB1 claim. The BCMB1, which includes this claim, is 2nd in priority on the Wilsonville Property. The Wilsonville Property is deemed to be valued significantly lower than anticipated and may not have sufficient value to pay off all secured creditors. |
| | | This claim is believed to have been subsumed by the Class 13 claim held by BCMB1. It appears that Quality was a substitute trustee for BCMB1 as noted on the title report for the Wilsonville Property. Once Quality's status is verified, the Debtor will amend its schedules to remove Quality as a creditor. |
| | | The Debtor purchased the Wilsonville Property subject to this secured claim. However, the Debtor did not assume the underlying obligations for any deficiency claim. Therefore, Quality's only recourse to be paid on this claim is through its lien, which is completely undersecured. |
| | | The Debtor intends to file a Motion to Determine Secured Status and Void Liens as to each claim secured by the Wilsonville Property. If the liens are stripped, Quality will have no other recorse against the Debtor and will not receive any distribution under this Plan. |
| | | Class 14 is deemed impaired under Bankruptcy Code section 1124 and is eligible to vote on the Plan. |

| **Class 15** – Shell Point | [X] Impaired<br>[ ] Unimpaired | Class 15 is impaired by the Plan. |
| --- | --- | --- |
| | | Class 15 consists of the secured scheduled claim of Shell Point. Shell Point failed to timely file a proof of claim.  The Shell Point claim is 1st priority on the Wilsonville Property. The Wilsonville Property is deemed to be valued significantly lower than anticipated and may not have sufficient value to pay off all secured creditors. |
| | | The Debtor purchased the Wilsonville Property subject to this secured claim. However, the Debtor did not assume the underlying obligations for any deficiency claim. Therefore, Shell Point's only recourse to be paid on this claim is through its lien, which is completely undersecured. |
| | | The Debtor intends to file a Motion to Determine Secured Status and Void Liens as to each claim secured by the Wilsonville Property. If the liens are stripped, Shell Point will have no other recorse against the Debtor and will not receive any distribution under this Plan. Because Shell Point holds  1st priority lien, a portion of this claim will be paid up to the current value of the secured interest. |
| | | Class 15 is deemed impaired under Bankruptcy Code section 1124 and is eligible to vote on the Plan. |

| **Class 16** – Umpqua | [ ] Impaired<br>[X] Unimpaired | Class 16 is unimpaired by the Plan. |
|---|---|---|
| | | Class 16 consists of the secured claim of Umpqua. Umpqua failed to timely file a Proof of Claim. The Debtor intends to satisfy the allowed claim secured by the West Linn Property held by Umpqua from the proceeds of the sale of the West Linn Property which is currently listed for sale. |
| | | Until paid in full on account of such Class 16 claim, the holder of allowed Class 16 claim shall be granted a lien in the West Linn Property to the same extent and validity as their pre-petition lien upon the West Linn Property. |
| | | Class 16 is deemed unimpaired under Bankruptcy Code section 1124 and is not eligible to vote on the Plan. |
| **Class 17** – General Unsecured Creditors | [X] Impaired<br>[ ] Unimpaired | Class 17 is impaired by the Plan. |
| | | Class 17 consists of the General Unsecured Creditors. Holders of allowed Class 17 claims shall receive a pro rata quarterly distribution collectively totaling the Debtor's Disposable Income, commencing at the beginning of the first (1st) Quarter of Year 2 of the Plan. Holders of allowed Class 17 claims shall be paid until their allowed claim is paid in full, or the Third (3rd) year anniversary of the Effective Date, whichever is earlier. |
| | | Class 17 is deemed impaired under Bankruptcy Code section 1124 and is eligible to vote on the Plan. |

| **Class 18** – Equity Security Holders | [X] Impaired<br>[ ] Unimpaired | Class 18 is impaired under the Plan. |
| | | Class 18 consists of the Equity Security Holders. All holders of Class 18 claims and interests shall retain their interest in the Debtor. While all holders of Class 18 claims and interests shall retain their interest in the Debtor, all claims which holders of Class 18 claims and interests may assert against the Debtor shall be disallowed in their entirety. |
| | | Class 18 is deemed impaired under Bankruptcy Code section 1124 and is eligible to vote on the Plan. |

## Article 5: Allowance and Disallowance of Claims

| 5.01 | **Disputed Claims** | A disputed claim is a claim that has not been allowed or disallowed by a non-appealable final order, and as to which either:<br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Distribution on a Disputed Claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a non-appealable final order. |
| 5.03 | **Settlement of Disputed Claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with the Court's approval and in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| 6.01 | **Assumed Contracts & Leases** | The Debtor is not party to any unexpired leases. The Debtor shall assume all executory contracts. |

| | | |
|---|---|---|
| 6.02 | **Cure Claims and Rejection Damage Claims** | Any lessor, lessee, or other party to an assumed contract asserting a cure claim in connection with the assumption of any unexpired lease or executory contract, as contemplated by Section 365(b) of the Bankruptcy Code, must file such cure claim with the Bankruptcy Court on or before the deadline to vote to accept or reject the Plan or such other deadline that is ordered by the Bankruptcy Court, asserting all alleged amounts accrued or alleged defaults through the Effective Date. Any lessor or other party to an executory contract or unexpired lease assumed by the Debtor failing to file a cure claim by such deadline shall be forever barred from asserting, collecting, or seeking to assert or collect any amounts or defaults relating thereto against the Debtor. The Debtor or the Reorganized Debtor, as applicable, shall have sixty (60) days from the Effective Date to file an objection to any cure claim. Any disputed cure claims shall be resolved either consensually or by the Bankruptcy Court. Except as may otherwise be agreed to by the parties, the Reorganized Debtor shall cure all undisputed cure claims within 180 days after the Effective Date. Except as may otherwise be agreed to by the parties, the Reorganized Debtor shall cure all disputed cure claims within 120 days after the entry of a final order determining the amount, if any, of the Debtor's liabilities with respect thereto.<br><br>A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan. |

## Article 7: Means for Implementation of the Plan

| | | |
|---|---|---|
| 7.01 | **Funding Source for Plan Payments** | Payments required under the Plan will be funded from (i) funds derived from the sale of the West Linn Property; (ii) revenues generated by continued operations; and (iii) as needed and subject to Court Approval, Brilliant will provide loans sufficient to meet Plan payments. |
| 7.02 | **Distributions by Debtor** | All distributions under the Plan shall be made by the Debtor, whether the Plan is confirmed pursuant to Section 1191(a) or (b) of the Bankruptcy Code. |
| 7.03 | **Vesting of Assets** | On the Effective Date, except as otherwise expressly provided in this Plan or in the Bankruptcy Code, all assets of the Debtor's estate (including any causes of action) shall vest in the Reorganized Debtor, free and clear of all liens, debts, obligations, claims, cure claims, liabilities, encumbrances, and all other interests of every kind and nature, and the Confirmation Order shall so provide. |

| 7.04 | **Default** | If the Debtor fails to make any payment required under the Plan and if such default continues for a period of 30 days following receipt by the Debtor of notice of such default from any affected holder of an allowed claim, upon written demand from any such affected holder of an allowed claim, unless the Debtor disputes the existence of the alleged payment default, the Debtor shall, within 30 days, seek to modify the Plan pursuant to Section 1193(b) of the Bankruptcy Code to, among other things, eliminate the said payment default. |
| --- | --- | --- |
| | | In the event of an uncured default, which is not eliminated by virtue of a post-confirmation modification of the Plan: (i) secured creditors may pursue their collateral and any other applicable remedies in any court of competent jurisdiction; and (ii) unsecured creditors may pursue any applicable remedies in any court of competent jurisdiction. |

## ■ Article 8: General Provisions

| 8.01 | **Definitions and Rules of Construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan. |
| --- | --- | --- |
| 8.02 | **Effective Date** | The Effective Date of this Plan (the "**Effective Date**") shall occur 14 days after the entry of a Final Order confirming the Plan. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan or such other agreement, document, or instrument. |

| 8.07 | **Corporate Governance** | To the extent prohibited by § 1123(a)(6) of the Bankruptcy Code, the Debtor will not issue non-voting equity interests, and their applicable governing documents will be deemed to have been amended as of the Effective Date of the Plan to prohibit such issuance |
| --- | --- | --- |
| 8.08 | **Retention of Jurisdiction** | Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Reorganization Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Reorganization Case that is permitted by applicable law, including any jurisdiction that is necessary or appropriate to ensure that the purposes and intent of the Plan are carried out. |

## Article 9: Discharge and Special Tax Provisions

| | | |
|---|---|---|
| 9.01 | **Discharge** | If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt imposed by this Plan. |

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of the Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i)     On which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192; or

(ii)     Excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

| | | |
|---|---|---|
| 9.02 | **Special Tax Provisions** | The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan shall not be taxed under any law imposing a stamp tax or similar tax.  There shall be no tax under any law imposing a stamp tax or similar tax due on the recording or execution of any documents related to: (i) transferring real or personal property to or from the Debtor; or (ii) financing obtained by the first transferee of any property from the Debtor as provided under the Plan. |

Specifically, but without limitation, there shall be no tax under any law imposing a stamp tax or similar tax due on the recording of any documents related to transferring property to or from the Debtor.

| | | |
|---|---|---|
| 9.03 | **Proposed Officer** | If the Plan is confirmed, Mr. Ronald Sapp and Ms. Michelle Baron shall continue to serve as the Debtor's owners, officers, and managers.  No distributions or compensation shall be made to Mr. Sapp or Ms. Baron until all payments on account of allowed Class 17 claims have been made. |

Dated: July 3, 2023                    **H2O Investment Properties, LLC**
                                       By: */s/ Ronald Sapp*
                                       Ronald Sapp
                                       Manager

                                       *Filer's Attestation: Pursuant to*
                                       *Local Rule 1001-2(g)(3) regarding signatures,*
                                       *Michael R. Dal Lago attests that concurrence*
                                       *in the filing of this paper has been obtained.*


Dated: July 3, 2023                    **DAL LAGO LAW**
                                       999 Vanderbilt Beach Road
                                       Suite 200
                                       Naples, FL 34108
                                       Telephone: (239) 571-6877

                                       By: */s/ Michael R. Dal Lago*
                                       MICHAEL R. DAL LAGO
                                       Florida Bar No. 102185
                                       Email: mike@dallagolaw.com
                                       CHRISTIAN GARRETT HAMAN
                                       Florida Bar No. 1017079
                                       Email: chaman@dallagolaw.com
                                       JENNIFER M. DUFFY
                                       Florida Bar No. 1028911
                                       Email: jduffy@dallagolaw.com

                                       *Counsel for H2O Investment Properties, LLC,*
                                       *Debtor and Debtor-in-Possession*

**<u>Exhibit "A"</u>**

Liquidation Analysis

**H2O Investment Properties, LLC**
**Liquidation Analysis**

|  | Liquidation Value of Assets | Estimated Amount of Encumbrances or Sale Discount | Net Value of Assets to Creditors |
|---|---|---|---|
| **Statement of Assets** |  |  |  |
| Real Property | West Linn $2,750,000.00 | $1,850,000.00 | $900,000.00 |
|  | Wilsonville $850,000.00 | $1,280,080.00 | -$430,080.00 |
| Total Liquidation Proceeds West Linn | $1,050,000.00 |  | $1,050,000.00 |
| Total Liquidation Proceeds | -$430,080.00 |  | -$430,080.00 |
| Administrative Expense Claims Chapter 7 Professional Fees |  |  | $5,000.00 |
| Chapter 7 Trustee Fees |  |  | $1,000.00 |
| Chapters 7 Trustee Costs |  |  | $500.00 |
| Chapter 11 Professional Fees |  |  | $15,000.00 |
| SubChapter V Fees |  |  | $2,500.00 |
| Accrued US Trustee Fees |  |  | $0.00 |
| Total Admininstative Claims |  |  | $24,000.00 |
| Priority Claims Priority Tax Claims |  |  | $3,000.00 |
| Total Priority Claims |  |  | $3,000.00 |
| Class 3 General Unsecured Claims |  |  | $350,000.00 |
| Total Unsecured Claims |  |  | $350,000.00 |

**<u>Exhibit "B"</u>**

Projected Financial Information

H2O Investment Properties, LLC
Profit & Loss Statement

| | | Year 1 | | | | Year 2 | | | | Year 3 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 |
| **Income** | | | | | | | | | | | | | |
| Source 1 | Sale of West Linn Brilliant Homes Loan | $0 | $0 | $0 | $0 | $2,700,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Source 2 (subject to Court Approval) | Refinance of Wilsonville Property | $86,893 | $57,327 | $57,327 | $57,327 | | $15,468 | $15,468 | $15,468 | $15,468 | $15,468 | $0 | $0 |
| Source 3 | -less land loan | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $15,468 | $795,343 |
| **Total Income** | | $86,893 | $57,327 | $57,327 | $57,327 | $2,700,000 | $15,468 | $15,468 | $15,468 | $15,468 | $15,468 | $15,468 | $795,343 |
| **Expense** | | | | | | | | | | | | | |
| Property Taxes | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Utilities (W/S, Elec, Gas, Trash) | | $9,000 | $9,000 | $9,000 | $9,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Landscape | | $3,000 | $3,000 | $3,000 | $3,000 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 | $1,500 |
| Maintenance | | $1,500 | $1,500 | $1,500 | $1,500 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Post Confirmation Sub V Trustee | | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 |
| Administrative Exp (Trustee) | | $5,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Administrative Exp (Legal Fees) | | $21,566 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Post Confirmation Professional Fees | | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 |
| Tax Claim Clackamas RE Tax | | $3,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 1 claim- Clackamas W/S | | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 |
| Class 2 claim- Arbor Village | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 3 claim-Citadel | | $28,522 | $28,522 | $28,522 | $28,522 | $1,312,876 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 4 claim-Oregon City 1 | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 5 claim-Oregon City 2 | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 6 claim- Deem 1 | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 7 claim- Deem 2 | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 8 claim-DJ | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 9 claim- Pans | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 10 claim -Ms Sirrine | | $0 | $0 | $0 | $0 | $5,202 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 11 claim-LPSC | | $0 | $0 | $0 | $0 | $197,594 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 12 claim-Oregon State CU | | $0 | $0 | $0 | $0 | $28,163 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 13 claim-BCMB1 | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 14 claim-Quality | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 15 claim-Shell Point | | $5,844 | $5,844 | $5,844 | $5,844 | $5,844 | $5,844 | $5,844 | $5,844 | $5,844 | $5,844 | $5,844 | $785,719 |
| Class 16 claim-Umpqua | | $0 | $0 | $0 | $0 | $102,872 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Office rent | | $1,006 | $1,006 | $1,006 | $1,006 | $1,006 | $1,006 | $1,006 | $1,006 | $1,006 | $1,006 | $1,006 | $1,006 |
| Business Software | | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 |
| Insurance | | $1,655 | $1,655 | $1,655 | $1,655 | $317 | $317 | $317 | $317 | $317 | $317 | $317 | $317 |
| **Total Expense** | | $86,892 | $57,327 | $57,327 | $57,327 | $1,662,175 | $15,468 | $15,468 | $15,468 | $15,468 | $15,467 | $15,468 | $795,343 |
| **Net Operating Income (Loss)** | | $0 | $0 | $0 | $0 | $1,037,825 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other Expenses | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Net Income (Loss)** | | $0 | $0 | $0 | $0 | $1,037,825 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Cash @ Beginning** | | | | | | | | | | | | | |
| Net Operating Income (Loss) | | $0 | $0 | $0 | $0 | $1,037,825 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Disposable Income | | $0 | $0 | $0 | $0 | $1,037,825 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 18- GUC | | $0 | $0 | $0 | $0 | $350,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Class 19 claim- Equity Holders | | | | | | | | | | | | | |